UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| CASUAL MALE CORP., et al., | Case No.   01-41404 (REG) |
| Debtors. | Jointly Administered |

**JOINT PLAN OF LIQUIDATION OF CASUAL MALE CORP., et al.
TOGETHER WITH THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

CADWALADER, WICKERSHAM & TAFT LLP
Counsel for the Debtors and
Debtors-In-Possession
100 Maiden Lane
New York, New York  10038
(212) 504-6000

KRONISH, LIEB, WEINER & HELLMAN, LLP
Counsel for the Official Committee of Unsecured
Creditors
1114 Avenue of the Americas
New York, New York 10136
(212) 479-6000

Dated:  As of August 18, 2003

SECTION 1.   DEFINITIONS AND INTERPRETATION ...................................................2

    A.      Definitions. ...........................................................................................2

    1.1     *Administrative Expense Claim* ..................................................2
    1.2     *Allowed* .....................................................................................2
    1.3     *Available Cash*..........................................................................2
    1.4     *Bankruptcy Code* ......................................................................2
    1.5     *Bankruptcy Court*......................................................................3
    1.6     *Bankruptcy Rules*......................................................................3
    1.7     *Business Day* .............................................................................3
    1.8     *Cash* ...........................................................................................3
    1.9     *Casual Male Creditors* ..............................................................3
    1.10    *Casual Male Debtors*.................................................................3
    1.11    *Chapter 11 Cases*......................................................................3
    1.12    *Claim*..........................................................................................3
    1.13    *Class*...........................................................................................3
    1.14    *Class 3 Cash Pool* .....................................................................4
    1.15    *Collateral* ...................................................................................4
    1.16    *Commencement Date*.................................................................4
    1.17    *Committee*...................................................................................4
    1.18    *Confirmation Date* .....................................................................4
    1.19    *Confirmation Hearing* ...............................................................4
    1.20    *Confirmation Order* ...................................................................4
    1.21    *Convenience Claim* ...................................................................4
    1.22    *Debtors* .......................................................................................5
    1.23    *Debtor Group*.............................................................................5
    1.24    *Disbursing Agent*.......................................................................5
    1.25    *Disputed Claim* ..........................................................................5
    1.26    *Disputed Claims Reserve* ..........................................................6
    1.27    *Distribution Record Date*..........................................................6
    1.28    *Effective Date*............................................................................6
    1.29    *Equity Interest* ...........................................................................6
    1.30    *Equity Security*...........................................................................6
    1.31    *Estate* ..........................................................................................7
    1.32    *Final Distribution Date*.............................................................7
    1.33    *Final Order*.................................................................................7
    1.34    *General Unsecured Claim* .........................................................7
    1.35    *Initial Distribution Date*............................................................7
    1.36    *Interim Distribution Date* ..........................................................7
    1.37    *Inter-Company Claim* ................................................................8

| 1.38 | *Liquidation Reserves* | 8 |
| 1.39 | *Loss Prevention Creditors* | 8 |
| 1.40 | *Loss Prevention Debtor* | 8 |
| 1.41 | *Non-Debtor Affiliates* | 8 |
| 1.42 | *Parent Creditors* | 8 |
| 1.43 | *Parent Debtor* | 8 |
| 1.44 | *Person* | 8 |
| 1.45 | *Plan* | 8 |
| 1.46 | *Plan Proponents* | 8 |
| 1.47 | *Plan Supplement* | 8 |
| 1.48 | *Priority Non-Tax Claim* | 8 |
| 1.49 | *Priority Tax Claim* | 9 |
| 1.50 | *Pro Rata Share* | 9 |
| 1.51 | *Reclamation Claim* | 9 |
| 1.52 | *Releasees* | 9 |
| 1.53 | *Repp Creditors* | 9 |
| 1.54 | *Repp Debtor* | 9 |
| 1.55 | *Schedule of Assumed Contracts* | 9 |
| 1.56 | *Schedules* | 9 |
| 1.57 | *Secured Claim* | 9 |
| 1.58 | *Settlement* | 10 |
| 1.59 | *Shoe Creditors* | 10 |
| 1.60 | *Shoe Debtors* | 10 |
| 1.61 | *Subclass* | 10 |
| 1.62 | *Subclass Debtor* | 10 |
| 1.63 | *Subordinated Claim* | 10 |
| 1.64 | *Tort Claim* | 10 |
| 1.65 | *Unsecured Creditor Groups* | 10 |
| 1.66 | *USB Indentures* | 10 |
| 1.67 | *USB Indenture Trustee* | 11 |
| 1.68 | *USB Note Claims* | 11 |
| 1.69 | *USB Noteholder* | 11 |
| 1.70 | *USB Notes* | 11 |
| 1.71 | *Wind-Down Team* | 11 |
| 1.72 | *Work n' Gear Creditors* | 11 |
| 1.73 | *Work n' Gear Debtor* | 11 |
| B. | Interpretation; Application of Definitions and Rules of Construction. | 11 |
| SECTION 2. | ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS | 12 |
| 2.1 | *Administrative Expense Claims* | 12 |

2.2     ***Compensation and Reimbursement Claims*** ............................................12
2.3     ***Priority Tax Claims*** ....................................................................12

SECTION 3.   CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ............13

3.1     ***Classes*** ...........................................................................13
3.2     ***Subclasses for Class 1*** ..................................................13
3.3     ***Subclasses for Class 3*** ..................................................14
3.4     ***Subclasses for Class 4*** ..................................................14

SECTION 4.   TREATMENT OF CLAIMS AND EQUITY INTERESTS ...................14

4.1     ***Secured Claims (Class 1)*** .............................................14
4.2     ***Priority Non-Tax Claims (Class 2)*** ...............................14
4.3     ***General Unsecured Claims (Class 3)*** ............................15
4.4     ***Convenience Claims (Class 4)*** .....................................15
4.5     ***Subordinated Claims (Class 5)*** .....................................16
4.6     ***Equity Interests (Class 6)*** ............................................16

SECTION 5.   ACCEPTANCE OR REJECTION OF PLAN .........................................16

5.1     ***Voting of Claims*** ..........................................................16
5.2     ***Acceptance by a Class*** ..................................................16
5.3     ***Presumed Acceptance of Plan*** ......................................17
5.4     ***Presumed Rejection of Plan*** .........................................17

SECTION 6.   MEANS FOR IMPLEMENTATION .......................................................17

6.1     ***Release of Parent Guaranty*** ..........................................17
6.2     ***Cancellation of Existing Securities and Agreements*** ..............................17
6.3     ***Process for Liquidation*** .................................................17
6.4     ***Settlement*** ....................................................................18

SECTION 7.   DISTRIBUTIONS ...................................................................18

7.1     ***Distribution Record Date*** .............................................18
7.2     ***Distributions*** ................................................................19
7.3     ***Disbursing Agent*** .........................................................20
7.4     ***Rights and Powers of Disbursing Agent*** .....................20
7.5     ***Surrender of Instruments*** ............................................20
7.6     ***Delivery of Distributions*** .............................................21
7.7     ***Manner of Payment Under Plan*** ..................................21
7.8     ***De Minimis Distributions*** .............................................21
7.9     ***Setoffs*** ..........................................................................22

7.10    *Allocation of Plan Distribution Between Principal and Interest* ...........22

7.11    *Withholding and Reporting Requirements* ...............................22

7.12    *Time Bar to Cash Payments* ................................................22

7.13    *Transactions on Business Days* ..........................................23

7.14    *Closing of Chapter 11 Cases* ...........................................23

SECTION 8.    PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS .............................................................23

8.1    *Payments and Distributions with Respect to Disputed Claims* ...............23

8.2    *Preservation of Insurance* ................................................24

8.3    *Resolution of Disputed Claims* ...........................................24

8.4    *Distributions After Allowance* ...........................................25

8.5    *Estimation of Claims* ....................................................26

8.6    *Disputed Claims Reserve* .................................................26

8.7    *Investments of the Disputed Claims and Other Reserves* .....................26

8.8    *Release of Amounts in the Disputed Claims Reserves* .......................27

8.9    *Mediation of Disputed Claim* .............................................27

8.10    *Removal of Civil Actions* ................................................28

SECTION 9.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES .................28

9.1    *General Treatment* .......................................................28

9.2    *Cure of Defaults* ........................................................29

9.3    *Approval of Rejection of Executory Contracts and Unexpired Leases* ...29

9.4    *Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to Plan* ...................30

9.5    *Survival of Debtors' Corporate Indemnities* .............................30

SECTION 10.    CONDITIONS PRECEDENT TO EFFECTIVE DATE ..........................30

10.1    *Conditions to Effective Date* .................................................30

10.2    *Waiver of Conditions* ....................................................30

SECTION 11.    EFFECT OF CONFIRMATION ............................................31

11.1    *Release of Assets* .......................................................31

11.2    *Binding Effect* ..........................................................31

11.3    *Termination of Stays* ....................................................31

11.4    *Injunction Against Asserting Claims or Interests* .......................31

11.5    *Injunction Against Interference with Plan* ..............................31

11.6    *Exculpation* .............................................................32

11.7    *Rights of Action* ........................................................32

11.8    *Release by Debtors* ......................................................32

11.9    *Release of Releasees by Other Releasees* ...................................................33

11.10  *Claims of the United States Government* ..................................................33

SECTION 12. RETENTION OF JURISDICTION........................................................33

SECTION 13. MISCELLANEOUS PROVISIONS........................................................35

13.1    *No Retiree Benefits* ...................................................................................35

13.2    *Deletion of Classes and Subclasses* ........................................................35

13.3    *Post-Effective Date Committee; Dissolution of Committee*....................36

13.4    *Post-Confirmation Date Fees and Expenses of Professionals*...............36

13.5    *USB Indenture Trustee Fees and Expenses and Preservation of the USB Indenture Trustee's charging lien*..............................................................37

13.6    *Exemption from Transfer Taxes* ..............................................................38

13.7    *Substantial Consummation*.......................................................................38

13.8    *Payment of Statutory Fees* .......................................................................38

13.9    *Effectuating Documents and Further Transactions.* .............................38

13.10  *Amendments.* ...............................................................................................38

13.11  *Revocation or Withdrawal of Plan* ..........................................................39

13.12  *Cramdown* ..................................................................................................39

13.13  *Severability*................................................................................................39

13.14  *Request for Expedited Determination of Taxes* ......................................39

13.15  *Courts of Competent Jurisdiction*............................................................40

13.16  *Governing Law*..........................................................................................40

13.17  *Time* ...........................................................................................................40

13.18  *Headings* ....................................................................................................40

13.19  *Exhibits*......................................................................................................40

13.20  *Notices* .......................................................................................................40

EXHIBITS

Exhibit A:    List of Debtors

Exhibit 1.21:  Convenience Class Amounts

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| CASUAL MALE CORP., et al., | Case No.    01-41404 (REG) |
| Debtors. | Jointly Administered |

## JOINT PLAN OF LIQUIDATION OF CASUAL MALE CORP., et al. TOGETHER WITH THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Casual Male Corp. and the other debtors and debtors-in-possession set forth on Exhibit A hereto, together with the official committee of unsecured creditors appointed in these chapter 11 cases, propose the following joint chapter 11 plan of liquidation pursuant to section 1121(a) of Title 11 of the United States Code.

**This Plan provides for the liquidation and conversion of all of the Debtors' respective assets to cash and the distribution of the net proceeds realized therefrom to their respective creditors in accordance with the priorities established by the Bankruptcy Code and the Settlement. While this is a joint plan for each of the Debtors, it does NOT provide that the Debtors' chapter 11 cases will be substantively consolidated. Accordingly, to the extent applicable to a particular Debtor, all of the provisions of this plan, including without limitation the definitions and distributions to creditors and equity interest holders, shall apply to the respective assets of, claims against, and equity interests in, such Debtor's separate estate.**

**The proponents of this plan reserve the right to proceed with confirmation of this plan as to some but not all of the Debtors at the same time.**

**SECTION 1.** **DEFINITIONS AND INTERPRETATION**

### A. Definitions.

The following terms used herein shall have the respective meanings defined below (such meanings to be equally applicable to both the singular and plural):

1.1 ***Administrative Expense Claim*** means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases allowed under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the applicable Debtor's Estate, any actual and necessary costs and expenses of operating the applicable Debtor's businesses, as a debtor-in-possession, any indebtedness or obligations incurred or assumed by the applicable Debtor, as a debtor-in-possession, during the Chapter 11 Cases (including, without limitation, (i) for the acquisition or lease of property or an interest in property or (ii) the rendition of services, including, without limitation, salaries, expenses and bonuses payable to the Wind-Down Team), any allowances of compensation and reimbursement of expenses to the extent allowed by a Final Order under section 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the Estate of the applicable Debtor under section 1930 of chapter 123 of title 28 of the United States Code.

1.2 ***Allowed*** means, with reference to any Claim or Equity Interest, (i) any Claim against or Equity Interest in any Debtor which has been listed by such Debtor in the Schedules, as such Schedules may be amended by the applicable Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim or equity interest has been filed, (ii) any timely filed Claim or Equity Interest as to which no objection to allowance has been interposed in accordance with Section 8.3 hereof or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent that such objection is determined in favor of the respective holder, or (iii) any Claim or Equity Interest allowed by a Final Order or expressly provided for under this Plan.

1.3 ***Available Cash*** means the actual aggregate sum of cash available in the Estates of the Debtors for distribution to their respective Unsecured Creditors (after the payment of any allowed secured, administrative and priority claims against the Debtors and after the establishment of the necessary Liquidation Reserves to administer the wind-down of the Debtors' Estates).

1.4 ***Bankruptcy Code*** means Title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

1.5     ***Bankruptcy Court***   means the United States District Court for the Southern District of New York having jurisdiction over these Chapter 11 Cases and, to the extent of the reference of the Chapter 11 Cases pursuant to 28 U.S.C. § 157(a), the United States Bankruptcy Court for the Southern District of New York.

1.6     ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases, and any Local Rules of the Bankruptcy Court.

1.7     ***Business Day***   means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.8     ***Cash*** means legal tender of the United States of America.

1.9     ***Casual Male Creditors*** means the Unsecured Creditors who are holders of Allowed Claims against one or more Casual Male Debtors, but only in their capacity as holders of such Allowed Claims.

1.10    ***Casual Male Debtors*** means The Casual Male, Inc., TCM Holding Co., Inc. and TCMB&T, Inc.

1.11    ***Chapter 11 Cases***   means individually, the voluntary case commenced by each Debtor under its respective case number as listed in Exhibit A, and collectively, the voluntary cases under chapter 11 of the Bankruptcy Code commenced by each Debtor on the Commencement Date in the United States Bankruptcy Court for Southern District of New York, styled <u>In re Casual Male Corp., et al.</u>, Case No. 01-41404 (REG), which are currently pending and being jointly administered before the Bankruptcy Court.

1.12    ***Claim***   means (i) any right to payment from any of the Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, known or unknown, or (ii) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from any of the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, known or unknown.

1.13    ***Class*** means a class of Claims or Equity Interests established pursuant to Section 3.

1.14 ***Class 3 Cash Pool*** means, for each Debtor Group, Available Cash allocated to the holders of Allowed General Unsecured Claims in the applicable Unsecured Creditor Group, as determined in accordance with, and subject to the terms of, the Settlement. Pursuant to the Settlement, the amount of Available Cash allocated to the applicable Debtor Groups may be adjusted upwards or downwards from time to time, as determined by the Plan Proponents, based upon the aggregate amount of all Allowed General Unsecured Claims and Available Cash.

1.15 ***Collateral*** means any property or interest in property of the Estate of any Debtor subject to a valid and properly perfected lien, charge or other encumbrance to secure the payment or performance of a Claim, which lien, charge or other encumbrance is not subject to avoidance under the Bankruptcy Code or other applicable law.

1.16 ***Commencement Date*** means May 18, 2001 with respect to all of the Debtors.

1.17 ***Committee*** means the official committee of general unsecured creditors appointed by the Office of the United States Trustee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code, as the membership of such Committee may be altered from time to time.

1.18 ***Confirmation Date*** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

1.19 ***Confirmation Hearing*** means the hearing to be held by the Bankruptcy Court regarding confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

1.20 ***Confirmation Order*** means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

1.21 ***Convenience Claim*** means (i) Allowed General Unsecured Claims of a holder of Allowed Claims against a Debtor in an aggregate amount equal to or less than the amount listed on Exhibit 1.21 for the applicable Debtor Group, (ii) the Allowed General Unsecured Claims against a Debtor of a holder that has irrevocably elected on its ballot to reduce all such Claims against such Debtor to the aggregate amount equal to the amount listed on Exhibit 1.21 for the applicable Debtor Group, or (iii) Disputed Claims against a Debtor that become Allowed General Unsecured Claims in an aggregate amount equal to or less than the amount listed on Exhibit 1.21 for the applicable Debtor Group, with the consent of, and in the amount agreed to by, the applicable Debtor or pursuant to a Final Order, provided, however, that in no event shall

the distributions to a holder of an Allowed Convenience Claim exceed 100% of the amount of the Allowed Claim if less than the amount of the Convenience Class treatment.

1.22 **_Debtors_** means, collectively, Casual Male Corp. and the debtors identified in Exhibit A, including in their capacity as debtors-in-possession pursuant to sections 1101, 1107(a) and 1108 of the Bankruptcy Code, not including the Non-Debtor Affiliates.

1.23 **_Debtor Group_** means any one of the following six groups of Debtors: (i) Parent Debtor, (ii) the Casual Male Debtors, (iii) the Shoe Debtors, (iv) the Repp Debtor, (v) the Work n' Gear Debtor, or (vi) the Loss Prevention Debtor.

1.24 **_Disbursing Agent_** means any entity (including any applicable Debtor if it acts in such capacity) in its capacity as a disbursing agent under Section 7.3 hereof.

1.25 **_Disputed Claim_** means any Claim which has not been Allowed pursuant to this Plan or a Final Order, including, without limitation,

(a) if no proof of claim has been timely and properly filed, a Claim that has been or hereafter is listed on the Schedules as other than disputed, contingent or unliquidated, but as to which the Plan Proponents or any other party in interest has interposed an objection or request for estimation which has not been withdrawn or determined by a Final Order; _or_

(b) if a proof of claim (whether relating to a Claim arising before or after the Commencement Date), or request for payment of an Administrative Expense Claim, has been timely and properly filed by the applicable deadline: (i) a Claim for which no corresponding Claim has been or hereafter is listed on the Schedules; (ii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as other than disputed, contingent or unliquidated, but for which the nature or amount of the Claim as asserted in the proof of claim varies from the nature and amount of such Claim as listed on the Schedules; (iii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as disputed, contingent or unliquidated and which has not been resolved by written agreement of the parties or a Final Order; (iv) a Claim for which a timely objection or request for estimation is interposed by the Plan Proponents or any other party in interest, which has not been withdrawn or determined by a Final Order; or (v) any Tort Claim. Further, a creditor who timely and properly filed a "cure" Claim under section 365(b) of the Bankruptcy Code relating to the assumption and/or assumption and assignment of an executory contract or unexpired lease during the Chapter 11 Cases, which "cure" Claim has not been resolved by written agreement of the parties or a Final Order, shall be deemed to have a Disputed Claim to the extent that such

timely and properly filed Claim differs from the amount, if any, of such Claim in the applicable Debtor's books and records.

(c) Because it is not anticipated that the holders of Allowed Equity Interests will receive any distribution on account of such Equity Interests, it is unnecessary to characterize any Equity Interests, or any portion thereof, as Disputed.

(d) Further, notwithstanding anything to the contrary in this Plan, if a Claim is or has been deemed disallowed for failure to comply with the requirements to timely and properly file a proof of claim pursuant to a Final Order establishing a deadline for filing Claims, including without limitation, the "bar date" order dated October 10, 2001, then, pursuant to such order(s), such Claim will not receive any distribution on account of such Claim, and, thus, it is unnecessary to characterize or otherwise treat any such Claim as Disputed under this Plan.

(e) For purposes of determining whether a particular Claim is a Disputed Claim prior to the expiration of any period of limitation fixed for the interposition by the Debtors or the Committee, as the case may be, of any objections to the allowance of Claims, any Claim that is not identified by the Debtors as an Allowed Claim shall be deemed a Disputed Claim.

1.26 ***Disputed Claims Reserve*** means, in the event there exists any Disputed Claim on or after the Effective Date, Cash to be set aside by the Debtors in an interest-bearing account, in amounts sufficient to pay all such Disputed Claims in accordance with the provisions of this Plan, if such Disputed Claims become Allowed Claims, and to be maintained under this Plan, as set forth more fully in Section 8.5 of this Plan. For Disputed Claims in Class 3, the amount of Cash to be set aside by the Debtors on the Effective Date shall not exceed the amount of the Class 3 Cash Pool.

1.27 ***Distribution Record Date*** means the date fixed as the "Distribution Record Date" by order of the Bankruptcy Court approving, *inter alia*, procedures to solicit acceptances or rejections of this Plan.

1.28 ***Effective Date*** means a Business Day on or after the Confirmation Date specified by the Plan Proponents on which (i) no stay of the Confirmation Order is in effect and (ii) the conditions to the effectiveness of this Plan specified in Section 10.1 hereof have been satisfied or waived. The Plan Proponents may specify different Effective Dates for one or more Debtors

1.29 ***Equity Interest*** means the rights of a holder of an Equity Security.

1.30 ***Equity Security*** means, with respect to any Debtor, its authorized capital stock, membership interests, partnership interests or similar ownership

interests, whether or not transferable, including any option, warrant or right, contractual or otherwise, to acquire any such interest.

      1.31   **Estate** means, as to each Debtor, the estate created pursuant to section 541 of the Bankruptcy Code upon the commencement of such Debtor's Chapter 11 Case.

      1.32   **Final Distribution Date** means, in the event that there exist on the Effective Date any Disputed Claims, a date selected by the Plan Proponents, in their sole discretion, on which all such Disputed Claims have been resolved by or in accordance with a Final Order.

      1.33   **Final Order** means an order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Cases, whether prior to or after the Effective Date, which has not been reversed, vacated or stayed and as to which (i) the time to appeal, petition for *certiorari* or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a new trial, reargument or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument or rehearing shall have expired; *provided*, *however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not cause such order to not be a Final Order.

      1.34   **General Unsecured Claim** means any Claim against the applicable Debtor that (i) is not an Administrative Expense Claim, a Priority Tax Claim, a Secured Claim, a Priority Non-Tax Claim, or a Subordinated Claim, or (ii) is otherwise determined by the Bankruptcy Court to be a General Unsecured Claim.

      1.35   **Initial Distribution Date** means the first date on or after the Effective Date, as scheduled by the Plan Proponents, in their sole discretion, that a distribution of Cash is made to holders of Allowed Claims under the Plan.

      1.36   **Interim Distribution Date** means one or more dates as scheduled by the Plan Proponents, in their sole discretion, that a distribution of Cash is made to the holders of Allowed Claims under the Plan after the Initial Distribution Date but before the Final Distribution Date.

1.37 **Inter-Company Claim** means any General Unsecured Claim held by a Debtor and/or Non-Debtor Affiliate against another Debtor and/or Non-Debtor Affiliate.

1.38 **Liquidation Reserves** means one or more reserves of Cash established by the Plan Proponents, in their sole discretion, in such amounts as determined by the Plan Proponents from time to time in their sole discretion, to fund adequately the administration of this Plan and the respective Chapter 11 Cases on and after the Effective Date.

1.39 **Loss Prevention Creditors** means holders of General Unsecured Claims against the Loss Prevention Debtor.

1.40 **Loss Prevention Debtor** means LP Innovations, Inc.

1.41 **Non-Debtor Affiliates** means each of JBAK Holding, Inc., JBAK Canton Realty, Inc., Jared Corporation, and Morse Shoe (Canada) Ltd.

1.42 **Parent Creditors** means holders of General Unsecured Claims against the Parent Debtor.

1.43 **Parent Debtor** means Casual Male Corp. f/k/a J. Baker, Inc.

1.44 **Person** means an individual, partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, governmental authority, governmental unit or other entity of whatever nature.

1.45 **Plan** means this joint chapter 11 plan of liquidation of the Debtors, to the extent applicable to any Debtor, including the Plan Supplement and the exhibits hereto and thereto, if any such Plan Supplement or exhibits are filed, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.46 **Plan Proponents** means each Debtor and the Committee.

1.47 **Plan Supplement** means a supplemental appendix to this Plan to be filed seven (7) days before the date of the Confirmation Hearing.

1.48 **Priority Non-Tax Claim** means any Claim other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code.

1.49 **_Priority Tax Claim_** means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.50 **_Pro Rata Share_** means, with respect to an Allowed Claim in Class 3, the proportion that the amount of any Claim bears to the aggregate amount of such Claim and all other Claims in the same Debtor Group entitled to distributions from the same source of Cash, including Disputed Claims.

1.51 **_Reclamation Claim_** means a reclamation claim as determined either (i) in accordance with the reclamation procedures order of the Bankruptcy Court dated February 25, 2002; (ii) by agreement between the applicable Debtor and the claimant; or (iii) by order of the Bankruptcy Court under section 546(c) of the Bankruptcy Code and applicable law.

1.52 **_Releasees_** means, collectively, (i) any director, officer, agent or employee of any Debtor who was employed or otherwise serving in such capacity on or after the Commencement Date, (ii) the Committee and (iii) any member of the Committee, any member, director, officer, agent or employee of a member of the Committee, or any of the Debtors' or the Committee's attorneys or advisors, in each case who were acting, employed or otherwise serving in such capacity on or after the Commencement Date.

1.53 **_Repp Creditors_** means holders of General Unsecured Claims against the Repp Debtor.

1.54 **_Repp Debtor_** means JBI Apparel, Inc.

1.55 **_Schedule of Assumed Contracts_** means the schedule listing the executory contracts and unexpired leases to be assumed by each Debtor, to be filed in the Plan Supplement.

1.56 **_Schedules_** means the schedules of assets and liabilities and the statement of financial affairs filed by each Debtor under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007 and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended.

1.57 **_Secured Claim_** means a Claim to the extent (i) secured by Collateral, the amount of which is equal to or less than the value of such Collateral (A) as set forth in this Plan, (B) as agreed to by the holder of such Claim and the applicable Debtor(s), or (C) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (ii) validly secured by the amount of any rights of setoff of the

holder thereof under section 553 of the Bankruptcy Code, which right of set off is not subject to avoidance under the Bankruptcy Code or other applicable law.

1.58 **Settlement** means the settlement between the Debtors and Committee approved by the Bankruptcy Court by order dated August 8, 2003, regarding the valuation and allocation of assets of the Debtors' Estates, including without limitation, the net proceeds from the sales of the Debtors' assets to third parties.

1.59 **Shoe Creditors** means holders of General Unsecured Claims against the Shoe Debtors.

1.60 **Shoe Debtors** means JBI, Inc., JBI Holding Co., Inc., Buckmin, Inc., Elm Equipment Corp., ISAB, Inc., Morse Shoe, Inc., Morse Shoe Int'l, Inc., Spencer Companies, Inc. and White Cap Footwear, Inc.

1.61 **Subclass** means a subclass of a Class of Claims established pursuant to Section 3.

1.62 **Subclass Debtor** means, with respect to any Subclass of Claims, the Debtor against or in which such Claims are Allowed.

1.63 **Subordinated Claim** means any Claim against a Debtor, whether secured or unsecured, for any fine, penalty, forfeiture, attorneys' fees (to the extent that such attorneys' fees are punitive in nature), or for multiple, exemplary or punitive damages, to the extent that such fine, penalty, forfeiture, attorneys' fees or damages are not compensation for actual pecuniary loss suffered by the holder of such Claim and not statutorily prescribed, and all claims against any of the Debtors of the type described in Section 510 of the Bankruptcy Code relating to equity interests (including all Equity Interests).

1.64 **Tort Claim** means any Claim related to personal injury, property damage, products liability, wrongful death, employment litigation or other similar Claims against any of the Debtors arising out of events that occurred, in whole or in part, prior to the Commencement Date, which have not previously been compromised and settled or otherwise resolved.

1.65 **Unsecured Creditor Groups** means each of the Parent Creditors, the Casual Male Creditors, the Shoe Creditors, the Repp Creditors, the Work n' Gear Creditors and the Loss Prevention Creditors.

1.66 **USB Indentures** means, collectively (i) that certain indenture, dated as of January 15, 1992, from Morse Shoe, Inc., as issuer, to U.S. Bank National Association, as trustee (as successor in interest to State Street Bank and Trust Company), providing for the issuance of Morse Shoe, Inc.'s Subordinated Convertible

Debentures Due 2002 in the original aggregate principal amount of $50,000,000; and (ii) that certain indenture dated as of June 12, 1992, from J. Baker, Inc., now known as Casual Male Corp., as issuer, to the Indenture Trustee (as successor in interest to State Street Bank and Trust Company, as successor in interest to Shawmut Bank, N.A.), providing for the issuance of Casual Male Corp.'s 7% Convertible Subordinated Notes Due 2002 in the original aggregate principal amount of $70,000,000.

1.67 ***USB Indenture Trustee*** means U.S. Bank National Association as trustee under the USB Indentures, either collectively or under a particular indenture, as applicable.

1.68 ***USB Note Claims*** means Claims arising under the USB Notes, together with any other instruments, issues, or other payment obligations in connection with the USB Indentures.

1.69 ***USB Noteholder*** means the holder of a USB Note Claim.

1.70 ***USB Notes*** means, collectively, (i) Morse Shoe, Inc.'s Subordinated Convertible Debentures Due 2002; and (ii) Casual Male Corp.'s 7% Convertible Subordinated Notes Due 2002.

1.71 ***Wind-Down Team*** means the individuals, from time to time, employed by the Debtors pursuant to Bankruptcy Court order dated July 9, 2002 to assist in the orderly wind-down of the Debtors' Estates.

1.72 ***Work n' Gear Creditors*** means holders of General Unsecured Claims against the Work n' Gear Debtor.

1.73 ***Work n' Gear Debtor*** means WGS Corp.

**B.    Interpretation; Application of Definitions and Rules of Construction.**

Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan, as the same may be amended, waived or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection or clause contained therein. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to this Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. The use of the term "Plan Proponents" shall refer to the applicable Debtor(s) and the Committee acting in consensus.

**SECTION 2.**     **ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS**

2.1     *Administrative Expense Claims.*

Except to the extent that the applicable Debtor and a holder of an Allowed Administrative Expense Claim agree to a different treatment, each Debtor shall pay to each holder of an Allowed Administrative Expense Claim against such Debtor, in full satisfaction of such Claim, Cash in an amount equal to such Claim on, or as soon thereafter as is reasonably practicable, the later of (i) the Initial Distribution Date and (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; provided, however, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by such Debtor, as a debtor-in-possession, or liabilities arising under loans or advances to or other obligations incurred by such Debtor, as debtor-in-possession, whether or not incurred in the ordinary course of business, shall be paid by such Debtor in the ordinary course of business, consistently with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

2.2     *Compensation and Reimbursement Claims.*

All entities seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under section 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code (i) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is forty-five (45) days after the Effective Date, and (ii) shall be paid in full in such amounts as are allowed by the Bankruptcy Court (A) upon the later of (i) the Effective Date and (ii) the date upon which the order relating to any such Administrative Expense Claim is entered, or (B) upon such other terms as may be mutually agreed upon between the holder of such an Administrative Expense Claim and the Plan Proponents.  Each Debtor is authorized to pay compensation for services rendered or reimbursement of expenses incurred from and after the Confirmation Date in the ordinary course of business and without the need for Bankruptcy Court approval.

2.3     *Priority Tax Claims.*

Except to the extent that the Plan Proponents and the holder of an Allowed Priority Tax Claim against the Debtors agree to a different treatment, the Debtors shall pay to each holder of an Allowed Priority Tax Claim Cash in an amount equal to such Allowed Priority Tax Claim on the later of (i) the Initial Distribution Date and (ii) the fifteenth Business Day of the first month following the month in which such

Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon after such dates as is practicable. All Allowed Priority Tax Claims that are not due and payable on or before the Initial Distribution Date shall be paid in the ordinary course of business as such obligations become due.

### SECTION 3. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

This Plan constitutes a separate chapter 11 plan of liquidation for each Debtor. Except for Administrative Expense Claims and Priority Tax Claims, all Claims against and Equity Interests in a particular Debtor are placed in the following Classes for each of the Debtors. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims, as described in Section 2, have not been classified and thus are excluded from the following Classes.

The following tables designate the Classes of Claims against and Equity Interests in each Debtor (as and to the extent that such Class of Claims or Equity Interests is applicable to such Debtor) and specify which of those Classes are (i) impaired or unimpaired by this Plan and (ii) entitled to vote to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code or deemed to reject this Plan.

#### 3.1 *Classes.*

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| **Class 1** | Secured Claims | Impaired | Yes |
| **Class 2** | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| **Class 3** | General Unsecured Claims | Impaired | Yes |
| **Class 4** | Convenience Claims | Impaired | Yes |
| **Class 5** | Subordinated Claims | Impaired | No (deemed to reject) |
| **Class 6** | Equity Holders | Impaired | No (deemed to reject) |

#### 3.2 *Subclasses for Class 1.*

For convenience of identification, this Plan classifies the Allowed Claims in Class 1 as a single Class. In the event that Allowed Claims in Class 1 would contain as elements thereof two or more Allowed Secured Claims collateralized by different properties or interests in property or collateralized by liens against the same property or interest in property having different priority, such Allowed Claims shall be divided into separate subclasses of Class 1.

### 3.3 *Subclasses for Class 3.*

For convenience of identification, this Plan classifies the Allowed Claims in Class 3 as a single Class. This Class is actually a group of 16 Subclasses, one for the Allowed Class 3 Claims against each Debtor. Each Subclass is treated under this Plan as a separate class for voting and distribution purposes.

### 3.4 *Subclasses for Class 4.*

For convenience of identification, this Plan classifies the Allowed Claims in Class 4 as a single Class. This Class is actually a group of 13 Subclasses, one for the Allowed Class 4 Claims against each Debtor, except the Casual Male Debtors. Each Subclass is treated under this Plan as a separate class for voting and distribution purposes. Consistent with the foregoing, there shall be no Class 4 with respect to, or Class 4 treatment against, the Casual Male Debtors.

## SECTION 4. TREATMENT OF CLAIMS AND EQUITY INTERESTS

In full satisfaction and discharge of all of the Claims against or Equity Interests in the Debtors:

### 4.1 *Secured Claims (Class 1).*

(a) On or as soon as reasonably practicable after the Initial Distribution Date, each holder of an Allowed Claim in Class 1 shall receive, at the election of the applicable Debtor, (i) Cash equal to 100% of the amount of the Allowed Claim; (ii) the net proceeds of sale of Collateral up to the amount of Allowed Claim; (iii) the Collateral securing the Allowed Claim; (iv) such treatment that leaves unaltered the legal, equitable and contractual rights of the holder; or (v) such other treatment as the Bankruptcy Court shall approve in connection with confirmation of applicable Debtor's Plan through a "cram down" under section 1129(b) of the Bankruptcy Code.

(b) Class 1 Claims are impaired, and any holders of Allowed Claims in Class 1 are entitled to vote to accept or reject this Plan. In the event that Class 1 rejects this Plan, the applicable Debtor(s) reserves the right to request, pursuant to Section 13.12, confirmation of its Plan through a "cram down" of such Subclass under section 1129(b) of the Bankruptcy Code and modification of the Plan to the extent, if any, confirmation under section 1129(b) requires modification.

### 4.2 *Priority Non-Tax Claims (Class 2).*

On or as soon as reasonably practicable after the Initial Distribution Date, to the extent not already paid, each holder of an Allowed Claim in

Class 2 shall receive Cash equal to the amount of such Allowed Claim, except to the extent that a holder of an Allowed Claim in Class 2 and the applicable Debtor have agreed to a different treatment.

### 4.3 *General Unsecured Claims (Class 3).*

(a) On or as soon as reasonably practicable after the Initial Distribution Date, and pursuant to, and subject to, the terms of the Settlement, each holder of an Allowed Claim in each Debtor Group (other than an Allowed Inter-Company Claim) shall receive a Pro Rata Share of Available Cash in the Class 3 Cash Pool for the applicable Unsecured Creditor Group.

(b) Allowed Inter-Company Claims have been taken into account in determining the distributions to the holders of Class 3 Claims pursuant to the Settlement. No separate distribution will be made on account of Allowed Inter-Company Claims. Each holder of an Allowed Inter-Company Claim will be deemed to have voted to accept the Plan and such Allowed Inter-Company Claim shall be tabulated accordingly as an acceptance.

(c) Each holder of an Allowed Reclamation Claim against a Debtor shall be entitled to receive, as part of its Class 3 distribution, in addition to its distribution as a Class 3 creditor, an additional amount of Cash equal to 10% of the Allowed Reclamation Claim; provided, however, that in no event shall the aggregate distributions to a holder of an Allowed Reclamation Claim exceed 100% of the amount of such Allowed Reclamation Claim.

(d) Any Tort Claim determined and liquidated pursuant to a judgment obtained in accordance with Section 8.1(b) and applicable non-bankruptcy law, which is no longer appealable or subject to review, shall be deemed an Allowed Claim in Class 3 against the applicable Debtor in such liquidated amount, *provided* that only the amount of such Allowed Claim that is less than or equal to the Debtor's self-insured retention or deductible in connection with the applicable insurance policy and is not satisfied from proceeds of insurance payable to the holder of such Allowed Claim under the Debtor's insurance policies shall be treated as an Allowed Claim for the purposes of distributions under this Plan.

### 4.4 *Convenience Claims (Class 4).*

On or as soon as reasonably practicable after the Initial Distribution Date, each holder of an Allowed Convenience Claim in Class 4 shall be paid an amount in Cash equal to one-hundred percent (100%) of such Allowed Claim.

4.5     *Subordinated Claims (Class 5).*

No property will be distributed to or retained by the holders of Allowed Claims in Class 5 on account of such Allowed Claims. All Allowed Claims in Class 5 shall be discharged as of the Effective Date.

4.6     *Equity Interests (Class 6).*

Because the value of the Debtors' assets is less then the total value of its debts and liabilities, it is not anticipated that the holders of Allowed Equity Interests in Class 6 will receive any distributions on account of such Equity Interests. The Plan Proponents will request that the Bankruptcy Court make a finding that the Equity Interests have no value for purposes of the "best interest" test under section 1129(a)(7) of the Bankruptcy Code. On the date the Debtors are dissolved in accordance with Section 6.3 of this Plan, the common stock certificates and other instruments evidencing Equity Interests in the Debtors shall be deemed cancelled without further act or action under any applicable agreement, law, regulation, order or rule, and the Equity Interests in the Debtors evidenced thereby shall be extinguished. In the event that any value exists for the holders of Allowed Equity Interest then Allowed Equity Interests in Class 6 will be paid on an Interim Distribution Date, if any, and the Final Distribution Date its Pro Rata Share of Available Cash, if any, in accordance with Section 7.2 of this Plan.

**SECTION 5.          ACCEPTANCE OR REJECTION OF PLAN**

5.1     *Voting of Claims.*

Each holder of an Allowed Claim in Classes 1, 3, and 4 (and only holders of Allowed Claims in these Classes) shall be entitled to vote to accept or reject this Plan. For purposes of calculating the number of Allowed Claims in a Class of Claims that have voted to accept or reject this Plan under section 1126(c) of the Bankruptcy Code, all Allowed Claims in such Class held by one entity or any affiliate thereof (as defined in the Securities Act of 1933 and the rules and regulations promulgated thereunder) shall be aggregated and treated as one Allowed Claim in such Class.

5.2     *Acceptance by a Class.*

Consistent with section 1126(c) of the Bankruptcy Code and except as provided for in section 1126(e) of the Bankruptcy Code, a Class of Claims shall have accepted this Plan if it is accepted by at least two-thirds in dollar amount, and more than one-half in number of the holders, of Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.

### 5.3    *Presumed Acceptance of Plan.*

Pursuant to section 1126(f) of the Bankruptcy Code, any Class that is unimpaired under a plan is conclusively presumed to accept a plan. Accordingly, under this Plan, Class 2 is unimpaired and is conclusively presumed to accept the Plan.

### 5.4    *Presumed Rejection of Plan.*

In accordance with section 1126(g) of the Bankruptcy Code, any Class that is to receive no distribution under a plan is conclusively presumed to reject a plan. Accordingly, Class 5 and Class 6 are conclusively presumed to reject this Plan and the votes of such holders will not be solicited with respect to such Claims.

## SECTION 6.         MEANS FOR IMPLEMENTATION

### 6.1    *Release of Parent Guaranty.*

Pursuant to the Settlement, certain guaranties issued by the Parent Debtor shall be terminated. Specifically, those guaranties of the Parent Debtor in favor of the creditors of the Casual Male Debtors shall be released and the Parent Debtor discharged from any further obligation to guarantee or otherwise satisfy the indebtedness of those Estates. No other valid guarantee has been terminated as a result of the Settlement, including, without limitation, any guarantee (i) provided by any of the Debtors, other than the Parent Debtor, and (ii) provided by Parent Debtor to any creditor of a Debtor, other than the Casual Male Debtors.

### 6.2    *Cancellation of Existing Securities and Agreements.*

Except for purposes of evidencing a right to distributions under this Plan or otherwise provided hereunder, on the Effective Date, all the agreements and other documents evidencing (i) any Claims or rights of any holder of a Claim against the applicable Debtor, including all indentures and notes evidencing such Claims and (ii) any options or warrants to purchase Equity Interests, obligating the applicable Debtor to issue, transfer or sell Equity Interests or any other capital stock of the applicable Debtor, shall be cancelled and terminated and of no further force or effect.

### 6.3    *Process for Liquidation.*

(a) The Plan is a chapter 11 Plan of Liquidation. Upon the distribution of all assets of the Debtors' Estates pursuant to the Plan and the filing by or on behalf of the Debtors of a certification to that effect with the Bankruptcy Court, the Debtors (and, in the Debtors' sole discretion, the Non-Debtor Affiliates) shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of each of the Debtors (or Non-Debtor Affiliates, as applicable) or payments to be made

in connection therewith; provided, however, that, in their sole discretion, Debtors may (but shall not be required to) file with the Office of the Secretary of State for the applicable State a certificate of dissolution. From and after the Effective Date, the Debtors (or Non-Debtor Affiliates, as applicable) shall not be required to file any document, pay any fee or expense, or take any other action, to withdraw their business operations from any states in which the Debtors (or Non-Debtor Affiliates, as applicable) previously conducted their business operations.

(b) From and after the Confirmation Date, the Debtors shall continue in existence for the purpose of (i) winding up their affairs as expeditiously as reasonably possible, (ii) liquidating, by conversion to Cash or other methods, any remaining assets of their Estates, as expeditiously as reasonably possible, (iii) enforcing and prosecuting claims, interests, rights and privileges of the Debtors, including, without limitation, the prosecution of avoidance actions in conjunction with the marshalling of the Debtors' assets, as agreed upon by the Plan Proponents, (iv) resolving Disputed Claims, (v) administering the Plan, and (vi) filing appropriate tax returns.

(c) From and after the Confirmation Date, and subject to the Effective Date, the Debtors may, without further approval of the Bankruptcy Court, use, sell, assign, transfer, abandon or otherwise dispose of at a public or private sale any the Debtors' remaining assets for the purpose of liquidating and converting such assets to cash, making distributions and fully consummating the Plan; provided, however, that the Debtors shall provide five business days' prior written notice to the Committee of any such use, sale, assignment, transfer, or other disposal of the Debtors' assets.

(d) From and after the Confirmation Date, the then current officers and directors of each of the Debtors shall continue to serve in their respective capacities through the earlier of the date such Debtor is dissolved in accordance with the Plan or the date such officer or director resigns, is replaced or is terminated.

6.4 **Settlement.**

The distributions to be made to holders of Allowed Claims shall be made consistent with the provisions of the Settlement.

**SECTION 7.     DISTRIBUTIONS**

7.1 ***Distribution Record Date.***

(a) As of 5:00 p.m. prevailing Eastern time on the Distribution Record Date, (i) the applicable Debtor's books and records for each of the Classes of Claims or Equity Interests as maintained by such Debtor or its respective agent and (ii) the registers with respect to USB Note Claims (collectively with (i), the "Final Claims Registers")

shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims or Equity Interests.

(b) The Debtors, the Committee, the USB Indenture Trustee and their respective agents, successors, and assigns shall have no obligation to recognize for any purpose any transfer of Claims occurring on or after 5:00 p.m. prevailing Eastern time on the Distribution Record Date.  Instead, they all shall be entitled to recognize and deal for all purposes hereunder only with those record holders stated in the Final Claims Registers, including, without limitation, with respect to any and all distributions to be made under this Plan, irrespective of the number of distributions to be made or the date of distributions.

### 7.2     *Distributions.*

(a)  (i)  On the Initial Distribution Date, the aggregate amount of Available Cash deposited into the applicable Class 3 Cash Pool and distributed to the holders of Allowed Class 3 Claims on such date shall be divided among them in proportion to their respective Pro Rata Share on such date; and

(ii) On each Interim Distribution Date and on the Final Distribution Date, distributions on account of Allowed Claims in Class 3 shall be distributed to Allowed Claim holders on a Pro Rata basis, which shall be determined by the Plan Proponents in a manner consistent with the terms of the Settlement; provided, however, that in no event shall the Debtors be obligated to make such a distribution if, in the discretion of the Plan Proponents, there is insufficient Available Cash to make a cost-efficient distribution, taking into account the size of the distribution to be made and the number of recipients of such distribution in which event such funds shall, in the Plan Proponents' discretion, be donated to a reputable charitable organization; and provided further, however, that in no event shall the foregoing impair the rights of the Plan Proponents under Section 8.8 of this Plan to use excess funds to satisfy the costs of administering and fully consummating this Plan.

(b)  In the event that at the date of any distribution of Available Cash to Unsecured Creditors there are any Disputed Claims held by Unsecured Creditors, then there shall be reserved for future distributions to the Unsecured Creditors pursuant to Section 7.2(a)(ii) a sufficient amount of Available Cash so that if all Disputed Claims subsequently become Allowed Claims, there will be adequate Available Cash to distribute to the Unsecured Creditors so that, upon making the final distribution to the Unsecured Creditors who become holders of Allowed Class 3 Claims, each such Unsecured Creditor will receive its full share of the aggregate Available Cash then and theretofore distributed to the holders of Allowed Class 3 Claims determined as provided in Section 7.2(a)(ii) above.

### 7.3 *Disbursing Agent.*

(a) All distributions under this Plan shall be made by the applicable Debtor as Disbursing Agent (or such other entity designated by the Plan Proponents as a Disbursing Agent on or after the Effective Date).

(b) A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court, and, in the event that a Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the applicable Debtor.

### 7.4 *Rights and Powers of Disbursing Agent.*

The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under this Plan, (ii) make all distributions contemplated hereby, (iii) employ professionals to represent it with respect to its responsibilities and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

### 7.5 *Surrender of Instruments.*

In the discretion of the Plan Proponents, each holder of an Allowed Claim represented by a certificated instrument or note may be required to surrender such instrument or note held by it to the Disbursing Agent or its designee. If so required by the Plan Proponents, then any holder of such instrument or note that fails to (i) surrender such instrument or note or (ii) execute and deliver an affidavit of loss and/or indemnity reasonably satisfactory to the Disbursing Agent and furnish a bond in form, substance and amount reasonably satisfactory to the Disbursing Agent before the first anniversary of the Effective Date, shall be deemed to have forfeited all rights and Claims and may not participate in any distribution under this Plan in respect of such Claim. Further, if so required by the Plan Proponents, then any other holder of an Allowed Claim who fails to take such action required by the Disbursing Agent or its designee to receive its distribution hereunder before the first anniversary of the Effective Date, or such earlier time as otherwise provided for in this Plan, may not participate in any distribution under this Plan in respect of such Claim. Any distribution forfeited hereunder shall in the Plan Proponents' discretion, be included in the Liquidation Reserves and/or become Available Cash.

### 7.6 *Delivery of Distributions.*

Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the Schedules filed with the Bankruptcy Court unless superseded by the address as set forth on the proofs of claim and equity interest filed by such holders or other writing, which is actually received by the Debtors after the Commencement Date at their headquarters facility or by the Debtors' attorneys in the Chapter 11 Cases, notifying the applicable Debtor of a change of address. If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the applicable Debtor is notified of such holder's then current address, at which time all missed distributions shall be made to such holder, without interest; provided however that all claims for undeliverable distributions shall be made on or before one hundred and twenty (120) days after the date such undeliverable distribution was initially made. After such date, all unclaimed property shall, in the Plan Proponents' discretion, be included in the Liquidation Reserves and/or become Available Cash, and the holder of any such Claim shall not be entitled to any other or further distribution under this Plan on account of such Claim. Any unclaimed property or other distributions on account of Allowed Claims which are forfeited or otherwise deemed abandoned under any provision of this Plan, including without limitation, this Section 7.6, shall not be subject to any applicable state or other law or requirements (including, without limitation, reporting requirements) relating to such abandoned property or other similar property subject to escheat or reversionary interests.

### 7.7 *Manner of Payment Under Plan.*

(a) All distributions to the holders of Allowed Claims against each of the Debtors under this Plan shall be made by, or on behalf of, the applicable Debtor.

(b) At the option of the applicable Debtor, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.

### 7.8 *De Minimis Distributions.*

The applicable Debtor as Disbursing Agent or such other entity designated by such Debtor as a Disbursing Agent on or after the Effective Date will not be required to distribute Cash to the holder of an Allowed Claim in an impaired Class if the amount of Cash to be distributed on any distribution date under the Plan (including the Initial Distribution Date and the Final Distribution Date) on account of such Claim is less than $25. Any holder of an Allowed Claim on account of which the amount of Cash to be distributed is less than $25 will have its Claim for such distribution discharged and will be forever barred from asserting any such Claim against the Debtors or their respective property. Any Cash not distributed pursuant to this Section 7.8 will, in the Plan

Proponents' discretion, be included in the Liquidation Reserves and/or become Available Cash, free of any restrictions thereon, and any such Cash held by a third-party Disbursing Agent will be returned to the Debtors.

### 7.9 *Setoffs.*

Each Debtor may, in accordance with the provisions of this Plan, the Bankruptcy Code, including, without limitation section 553, and/or applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant to this Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), the Claims, rights and causes of action of any nature that such Debtor may hold against the holder of such Allowed Claim; *provided*, *however*, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the applicable Debtor of any such Claims, rights and causes of action that the applicable Debtor may possess against such holder; and *provided further*, *however*, that any Claims of each Debtor arising before the Commencement Date shall first be setoff against Claims against such Debtor arising before the Commencement Date.

### 7.10 *Allocation of Plan Distribution Between Principal and Interest.*

All distributions in respect of any Allowed Claim shall be allocated first to the principal amount of such Allowed Claim, as determined for federal income tax purposes, and thereafter, to the remaining portion of such Allowed Claim comprising interest (but solely to the extent that interest is an allowable portion of such Allowed Claim).

### 7.11 *Withholding and Reporting Requirements.*

In connection with this Plan and all instruments issued in connection therewith and distributed thereon, the applicable Debtor shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under this Plan shall be subject to any such withholding or reporting requirements.

### 7.12 *Time Bar to Cash Payments.*

Checks issued by the Debtors in respect of Allowed Claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof. Requests for reissuance of any check shall be made to the applicable Debtor by the holder of the Allowed Claim to whom such check originally was issued. Any Claim in respect of such a voided check shall be made on or before thirty (30) days after the expiration of the sixty day period following the date of issuance of such check. After such date, all

funds held on account of such voided check shall, in the Plan Proponents' discretion, be included in the Liquidation Reserves and/or become Available Cash, and the holder of any such Allowed Claim shall not be entitled to any other or further distribution under this Plan on account of such Allowed Claim.

### 7.13   *Transactions on Business Days.*

If the Effective Date or any other date on which a transaction may occur under this Plan shall occur on a day that is not a Business Day, the transactions contemplated by this Plan to occur on such day shall instead occur on the next succeeding Business Day.

### 7.14   *Closing of Chapter 11 Cases.*

When all Disputed Claims filed against the Debtors have become Allowed Claims or have been disallowed by Final Order, and all distributions in respect of Allowed Claims have been made in accordance with this Plan, or at such earlier time as the Plan Proponents deem appropriate, the Debtors shall seek authority from the Bankruptcy Court to close their respective Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## SECTION 8.          PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

### 8.1   *Payments and Distributions with Respect to Disputed Claims.*

(a) Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

(b) All Tort Claims are Disputed Claims.  At the applicable Debtor's option, any unliquidated Tort Claim as to which a proof of claim was timely filed in the Chapter 11 Cases shall be determined and liquidated in the administrative or judicial tribunal(s) in which it is pending on the Effective Date or, if no action was pending on the Effective Date, in any administrative or judicial tribunal of appropriate jurisdiction.  The applicable Debtor may exercise the above option by service of a notice upon the holder of the applicable Tort Claim of a notice informing the holder of such claim that the applicable Debtor has exercised such option.  Upon the individual Debtor's service of such notice, the automatic stay provided under section 362 of the Bankruptcy Code, as extended under Section 11.3 of this Plan, shall be deemed modified, without the necessity for further Bankruptcy Court approval, solely to the extent necessary to allow the parties to determine or liquidate the Tort Claim in the applicable administrative or judicial tribunal(s).  Notwithstanding the foregoing, at all times prior to or after the Effective

Date, the Bankruptcy Court shall retain jurisdiction relating to Tort Claims, including the applicable Debtor's right to have such Claims determined and/or liquidated in the Bankruptcy Court (or the United States District Court for the Southern District of New York pursuant to section 157(b)(2)(B) of title 28 of the United States Code, as may be applicable). Any Tort Claim determined and liquidated pursuant to a judgment obtained in accordance with this Section 8.1(b) and applicable non-bankruptcy law which is no longer appealable or subject to review shall be deemed an Allowed Claim in Class 3 against the applicable Debtor in such liquidated amount, provided that only the amount of such Allowed Claim that is less than or equal to the Debtor's self-insured retention or deductible in connection with the applicable insurance policy and is not satisfied from proceeds of insurance payable to the holder of such Allowed Claim under the Debtors' insurance policies shall be treated as an Allowed Claim for the purposes of distributions under this Plan. In no event shall a distribution be made under this Plan to the holder of a Tort Claim on account of any portion of an Allowed Claim in excess of the applicable Debtor's deductible or self-insured retention under any applicable insurance policy. In the event a Tort Claim is determined and liquidated pursuant to a judgment or order obtained in accordance with this Section 8.1(b) and applicable non-bankruptcy law provides for no recovery against the applicable Debtor, which is no longer appealable or subject to review, such Tort Claim shall be deemed expunged without the necessity for further Bankruptcy Court approval upon the applicable Debtor's service of a copy of such judgment or order upon the holder of such Tort Claim. Nothing contained in this Section 8.1(b) shall constitute or be deemed a waiver of any Claim, right or cause of action that the applicable Debtor may have against any Person in connection with or arising out of any Tort Claim, including, without limitation, any rights under section 157(b)(5) of title 28 of the United States Code. This entire Section 8.1(b) is subject to the applicable Debtor's right to elect to follow the procedures provided for in Sections 8.5 and 8.9.

### 8.2 *Preservation of Insurance.*

Nothing in this Plan, including the discharge and release of the Debtors as provided in this Plan, shall diminish or impair the enforceability of any insurance policies that may cover Claims against any Debtor.

### 8.3 *Resolution of Disputed Claims.*

(a) Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise expressly provided for below, each Debtor, in coordination and consultation with the Committee, shall have the exclusive right (except as to applications for allowances of compensation and reimbursement of expenses under sections 330 and 503 of the Bankruptcy Code) to make and file objections to Claims and shall serve a copy of each objection upon the holder of the Claim to which the objection is made as soon as practicable, but in no event later than ninety (90) days after the Effective Date; *provided*, *however*, that such ninety (90) day period may be automatically

extended by the applicable Debtor, without any further application to, or approval by, the Bankruptcy Court, for an additional thirty (30) days with the consent of the Committee (not to be unreasonably withheld). The foregoing deadlines for filing objections to Claims shall not apply to Tort Claims and, accordingly, no such deadline shall be imposed by this Plan. Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the holder thereof if the Debtors effect service in any of the following manners: (i) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (ii) to the extent that counsel for the holder is unknown, by first class mail, postage prepaid, on the signatory on the proof of claim or equity interest or other representative identified in the proof of claim or equity interest or any attachment thereto; or (iii) by first class mail, postage prepaid, on any counsel that has appeared on the holder's behalf in the Chapter 11 Cases.

(b) Notwithstanding the foregoing, the Committee shall also have the right to make and file objections to Claims filed against any Debtor, which objections shall be made in coordination and consultation with such Debtor(s) and shall be made within the time frames provided for in this Section 8.3. From and after the Confirmation Date, subject to the Effective Date, all objections shall be litigated to a Final Order except to the extent that the applicable Debtor (with the consent of the Committee not to be unreasonably withheld) or the Committee (with the consent of the applicable Debtor not to be unreasonably withheld), as applicable, elects to withdraw any such objection or the applicable Debtor (with the consent of the Committee not to be unreasonably withheld) or the Committee (with the consent of the applicable Debtor not to be unreasonably withheld), as applicable, and the holder of the Disputed Claim elect to compromise, settle or otherwise resolve any such objection, in which event they may settle, compromise or otherwise resolve any such Disputed Claim without approval of the Bankruptcy Court. If requested by the Committee, the applicable Debtor shall prepare, issue and deliver to the Committee, within forty-five (45) days following the end of each month, a report with respect to the status of the resolution of Disputed Claims, in a form to be agreed upon by the professionals for the applicable Debtor and the Committee. Nothing in this Plan shall alter or impair any settlement authority, procedures and/or protocols used by the Debtors pursuant to orders of the Bankruptcy Court and/or agreement of the Committee prior to the Effective Date and the Debtors may continue, after the Effective Date, to enter into one or more settlements (including, without limitation, lump-sum Cash settlements) pursuant to such pre-Effective Date authority, procedures and/or protocols.

8.4     *Distributions After Allowance.*

If, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, the applicable Debtor shall distribute to the holder thereof the distributions, if any, to which such holder is then entitled under this Plan. Any distributions shall be made as soon as practicable after the date that (i) the order or judgment of the Bankruptcy Court allowing such Disputed Claim (or portion thereof) becomes a Final Order, or (ii) the

parties enter into an agreement to compromise, settle or otherwise resolve such Disputed Claims in accordance with the procedures set forth herein (including, without limitation, any pre-Effective Date settlement authority, procedures and/or protocols), but in no event more than thirty (30) days thereafter.

### 8.5    *Estimation of Claims.*

The applicable Debtor or the Committee may, at any time, and in consultation with each other, request that the Bankruptcy Court estimate any contingent, unliquidated or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the applicable Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated or Disputed Claim, the amount so estimated shall constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the applicable Debtor or the Committee may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another.  On and after the Confirmation Date, subject to the Effective Date, Claims which have been estimated may be subsequently compromised, settled, withdrawn or otherwise resolved without further order of the Bankruptcy Court.

### 8.6    *Disputed Claims Reserve.*

On and after the Effective Date, the Debtors shall hold in the Disputed Claims Reserve, Cash in an aggregate amount sufficient to pay to each holder of a Disputed Claim the amount of Cash that such holder would have been entitled to receive under this Plan if such Claim had been an Allowed Claim on the Effective Date.  Cash withheld and reserved for payments to holders of Disputed Claims shall be held and deposited by the Debtors in one or more segregated interest-bearing reserve accounts, as determined by the Plan Proponents, to be used to satisfy such Claims if and when such Disputed Claims become Allowed Claims.

### 8.7    *Investments of the Disputed Claims and Other Reserves.*

The Plan Proponents shall be permitted, from time to time, in their discretion to invest all or a portion of the Cash in the Disputed Claims Reserves (and any other reserves established by the Plan Proponents, including one or more Liquidation Reserves to fund the wind-down of the Debtors' Estates and implementation of the Plan)

in United States Treasury Bills, interest-bearing certificates of deposit, tax exempt securities or investments permitted by section 345 of the Bankruptcy Code or otherwise authorized by the Bankruptcy Court, including that certain order of the Bankruptcy Court dated May 14, 2002, using prudent efforts to enhance the rates of interest earned on such Cash without inordinate credit risk or interest rate risk. All interest earned on such Cash shall be held in the Disputed Claims Reserves and Liquidation Reserves, after satisfaction of any expenses incurred in connection with the maintenance of the Disputed Claims Reserves and Liquidation Reserves, including taxes payable on such interest income, if any, shall be transferred out of the Disputed Claims Reserves and Liquidation Reserves, in the discretion of the Plan Proponents, be used to satisfy the costs of administering and fully consummating this Plan or become Available Cash for distribution in accordance with this Plan.

### 8.8 *Release of Amounts in the Disputed Claims Reserves.*

If at any time or from time to time after the Effective Date, there shall be Cash in the Disputed Claims Reserves in an amount in excess of the Debtors' maximum remaining payment obligations to the then existing holders of Disputed Claims against the Debtors under this Plan, such excess funds shall become available to the Debtors and shall, in the discretion of the Plan Proponents, be deposited in the Liquidation Reserves or become Available Cash for distribution in accordance with this Plan. Excess Cash in the Liquidation Reserves shall become Available Cash for distribution in accordance with this Plan as and when agreed upon by the Plan Proponents.

### 8.9 *Mediation of Disputed Claim.*

The automatic stay of section 362 of the Bankruptcy Code shall remain in effect after the Effective Date with respect to all Disputed Claims. All holders of Disputed Claims (other than Tort Claims, except as otherwise provided for in Section 8.9(f) below) shall comply with the following procedures:

(a) At its option, the applicable Debtor may (i) request that the holder of a Disputed Claim provide documentation to evidence the validity and amount of such Claim, and/or (ii) submit a written counter-proposal to the holder of a Disputed Claim. In lieu of, or in addition to, the foregoing, the applicable Debtor may file an objection to such Disputed Claim.

(b) The holder of a Disputed Claim may accept the applicable Debtor's counter-proposal at any time within fourteen (14) days of the applicable Debtor's mailing of such counter-proposal.

(c) If no settlement is reached pursuant to paragraphs (a) and (b) above, the applicable Debtor, at its discretion (in consultation with the Committee), shall have

the option to require the holder of a Disputed Claim to participate in a non-binding mediation process. All mediation pursuant to this Section 8.9 shall be conducted at the applicable Debtor's option in either Boston, Massachusetts or New York, New York, pursuant to the Local Bankruptcy Rules of the Bankruptcy Court. In the event that a mediation is scheduled and the holder of the Disputed Claim does not participate in the mediation, the Disputed Claim shall be disallowed in its entirety.

(d) If the applicable Debtor and the holder of a Disputed Claim are unable to reach an agreement on a Claim amount pursuant to the procedures set forth above, the Disputed Claim shall be submitted to the Bankruptcy Court for resolution. If it is determined that the United States Bankruptcy Court for the Southern District of New York does not have jurisdiction to resolve any Disputed Claim, then the Disputed Claim shall be submitted to the United States District Court for the Southern District of New York for resolution.

(e) The applicable Debtor (with the consent of the Committee) and the holder of a Disputed Claim may seek to settle, compromise or otherwise resolve any Disputed Claim at any time in accordance with this Plan or any order of the Bankruptcy Court approving a settlement procedure for Disputed Claims for the applicable Debtor and the Committee.

(f) At its option, the applicable Debtor may require the holder of a Disputed Tort Claim to either (i) comply with the mediation procedures provided for in this Section 8.9 or (ii) comply with any other separate mediation and/or arbitration procedures approved in the Chapter 11 Cases.

### 8.10 *Removal of Civil Actions.*

To the extent the Debtors have any civil state court actions pending on or after the Confirmation Date, the Debtors shall retain the ability to remove such actions to the Bankruptcy Court pursuant to 28 U.S.C. § 1452 and Bankruptcy Rules 9006 and 9027 until the closure of the respective Chapter 11 Cases of the applicable Debtors.

### SECTION 9. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 9.1 *General Treatment.*

(a) On the Effective Date, all executory contracts and unexpired leases to which each Debtor is a party shall be deemed rejected as of the Effective Date, except for an executory contract or unexpired lease that (i) is specifically designated as a contract or lease to be assumed on the Schedule of Assumed Contracts set forth in the Plan Supplement, provided however, that the Debtors reserve the right to amend the Plan Supplement at any time on or before the Effective Date to amend the Schedule of

Assumed Contracts to add or delete any executory contract or unexpired lease, thus providing for its assumption, assumption and assignment, or rejection, or (ii) is the subject of a separate motion to assume, assume and assign, or reject filed under section 365 of the Bankruptcy Code by the applicable Debtor on or before the Effective Date.

(b) Each of the applicable Debtors expressly reserves the right to reject any contract or lease in the event that there is a dispute concerning the amount necessary to cure defaults, notwithstanding the fact that such dispute may arise after the Effective Date of the Plan.

### 9.2   *Cure of Defaults.*

(a) Except to the extent that a different treatment has been agreed to by the non-Debtor party or parties to any executory contract or unexpired lease to be assumed under the Plan pursuant to Section 9.1 hereof, the applicable Debtor shall, pursuant to the provisions of sections 1123(a)(5)(G) and 1123(b)(2) of the Bankruptcy Code and consistently with the requirements of section 365 of the Bankruptcy Code, within thirty (30) days after the Effective Date, file and serve a pleading with the Bankruptcy Court listing the cure amounts of all executory contracts or unexpired leases to be assumed.  The parties to such executory contracts or unexpired leases to be assumed by the applicable Debtor shall have fifteen (15) days from service to object to the cure amounts listed by the applicable Debtor.  If there are any objections filed, the Bankruptcy Court shall hold a hearing.  The applicable Debtor shall retain its right to reject any of its executory contracts or unexpired leases, including contracts or leases that are subject to a dispute concerning amounts necessary to cure any defaults.  Notwithstanding the foregoing, at all times through the date that is five (5) Business Days after the Bankruptcy Court enters an order resolving and fixing the amount of a disputed cure amount, the Debtors shall have the right to reject such executory contract or unexpired lease.

(b) Subject to Section 9.1 of this Plan, the executory contracts and unexpired leases on the Schedule of Assumed Contracts shall be assumed by the respective Debtors as indicated on such Schedule.  Except as may otherwise be ordered by the Bankruptcy Court, the Debtors shall have the right to cause any assumed executory contract or unexpired lease to vest in the Debtor designated for such purpose by the Debtors.

### 9.3   *Approval of Rejection of Executory Contracts and Unexpired Leases*.

Entry of the Confirmation Order shall constitute the approval, pursuant to section 365(a) of the Bankruptcy Code, of the rejection of any executory contracts and unexpired leases to be rejected as and to the extent provided in Section 9.1 of this Plan.

### 9.4 *Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to Plan.*

Claims arising out of the rejection of an executory contract or unexpired lease pursuant to Section 9.1 of this Plan must be filed with the Bankruptcy Court no later than twenty (20) days after the Effective Date. Any Claims not filed within such time period will be forever barred from assertion against any of the applicable Debtors and/or the Estates.

### 9.5 *Survival of Debtors' Corporate Indemnities.*

Any obligations of any of the Debtors pursuant to the applicable Debtor's corporate charters and bylaws or agreements entered into any time prior to the Effective Date, to indemnify any Releasee, with respect to all present and future actions, suits and proceedings against such Debtor or such Releasee, based upon any act or omission for or on behalf of such Debtor, shall not be discharged or impaired by confirmation of this Plan. Such obligations shall be deemed and treated as executory contracts to be assumed by the applicable Debtor pursuant to this Plan, and shall continue as obligations of the applicable Debtor.

## SECTION 10.  CONDITIONS PRECEDENT TO EFFECTIVE DATE

### 10.1 *Conditions to Effective Date.*

The following are conditions precedent to the Effective Date:

(a) The Bankruptcy Court shall have entered the Confirmation Order, in form and substance satisfactory to the Plan Proponents;

(b) No stay of the Confirmation Order shall then be in effect; and

(c) All documents, instruments and agreements, in form and substance satisfactory to the Plan Proponents, provided for under or necessary to implement this Plan shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the parties benefited thereby.

### 10.2 *Waiver of Conditions.*

The Plan Proponents may waive the conditions to effectiveness of this Plan set forth in Section 10.1(c) of this Plan without leave of or notice to the Bankruptcy Court and without any formal action other than proceeding with confirmation of this Plan

## SECTION 11.  EFFECT OF CONFIRMATION

### 11.1  *Release of Assets.*

Until the Effective Date, the Bankruptcy Court shall retain jurisdiction of the Debtors, their assets and properties.  Thereafter, jurisdiction of the Bankruptcy Court shall be limited to the subject matters set forth in Section 11 of this Plan, and the Debtors shall perform and wind up their affairs as provided in this Plan.

### 11.2  *Binding Effect.*

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, and subject to the Effective Date, the provisions of this Plan shall bind any holder of a Claim against, or Equity Interests in, the Debtors and their respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under this Plan and whether or not such holder has accepted this Plan.

### 11.3  *Termination of Stays.*

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Final Distribution Date.

### 11.4  *Injunction Against Asserting Claims or Interests.*

On and after the Confirmation Date, subject to the Effective Date, all persons are permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively or otherwise) on account of or respecting any claim, debt, right or cause of action of the Debtors for which the Plan Proponents retain sole and exclusive authority to pursue in accordance with Section 11.7 of this Plan.

### 11.5  *Injunction Against Interference with Plan.*

Upon the entry of the Confirmation Order, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan.

### 11.6 *Exculpation.*

None of the Debtors nor any Releasee shall have or incur any liability to any holder of a Claim or Equity Interest for any act or omission (and in the case of any director, officer, agent or employee of any Debtor who was employed or otherwise serving in such capacity on the Commencement Date, any claims against such Persons) in connection with, or arising out of, the Chapter 11 Cases, the pursuit of confirmation of this Plan, transactions or relationships with the applicable Debtor (either prior to or after the Commencement Date), securities claims, fiduciary and other similar claims, the consummation of this Plan, the administration of this Plan or the property to be distributed under this Plan, except for willful misconduct or gross negligence, and, in all respects, the Plan Proponents and such Persons shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities during the Chapter 11 Cases and under this Plan. Without limitation of the foregoing, each such Releasee shall be released and exculpated from any and all claims (as defined in section 101(5) of the Bankruptcy Code), obligations, suits, judgments, damages, rights, causes of action and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that any holder of a Claim or Equity Interest is entitled to assert in its own right or on behalf of any other Person, based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place on or prior to the Effective Date in any way relating to the subject matter of this Section 11.6.

### 11.7 *Rights of Action.*

On and after the Effective Date, and except as may otherwise be agreed to by the Plan Proponents, the Plan Proponents will retain and have the exclusive right to enforce any and all present or future rights, claims or causes of action against any Person and rights of the Debtors that arose before or after the Commencement Date, including, but not limited to, rights, claims, causes of action, avoiding powers, suits and proceedings arising under sections 544, 545, 548, 549, 550 and 553 of the Bankruptcy Code. The Plan Proponents may pursue, abandon, settle or release any or all such rights of action, as they deem appropriate, without the need to obtain approval or any other or further relief from the Bankruptcy Court. The Debtors may, in their discretion, offset any such claim held against a Person against any payment due such Person under this Plan; *provided*, *however*, that any claims of any of the Debtors arising before the Commencement Date shall first be offset against Claims against any of the Debtors arising before the Commencement Date.

### 11.8 *Release by Debtors.*

From and after the Effective Date, the Releasees shall be released by each Debtor from any and all claims (as defined in section 101(5) of the Bankruptcy Code),

obligations, suits, judgments, damages, rights, causes of action and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that any Debtor is entitled to assert in its own right or on behalf of the holder of any Claim or Equity Interest or other Person, based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place on or prior to the Effective Date in any way relating to any Debtor, the Chapter 11 Cases or the negotiation, formulation and preparation of this Plan or any related document, except for (i) claims or causes of action against any Releasee resulting from the willful misconduct or gross negligence of such Releasee and (ii) claims against or liabilities of directors, officers or employees of any Debtor in respect of any loan, advance or similar payment by any Debtor to any such Person or any contractual obligation owed by such Person to any Debtor.

### 11.9 *Release of Releasees by Other Releasees.*

From and after the Effective Date, the Releasees shall release each other from any and all claims (as defined in section 101(5) of the Bankruptcy Code), obligations, suits, judgments, damages, rights, causes of action and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that any Releasee is entitled to assert against any other Releasee, based in whole or in part upon any act or omission, transaction, agreement, event or occurrence taking place on or before the Effective Date in any way relating to any Debtor, the Chapter 11 Cases or the negotiation, formulation and preparation of this Plan or any related document, except for claims or causes of actions against any Releasee resulting from the willful misconduct or gross negligence of such Releasee.

### 11.10 *Claims of the United States Government.*

Nothing in this Plan shall effect a release of any non-Debtor from any claim by the United States Government or any of its agencies; nor shall anything in this Plan enjoin the United States from bringing any claim, suit, action or other proceeding against any non-Debtor; *provided*, *however*, that this Section 11.10 shall in no way affect or limit the discharge granted to any Debtor under Chapter 11 of the Bankruptcy Code.

### SECTION 12.      RETENTION OF JURISDICTION

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, or related to the Chapter 11 Cases and this Plan for, among other things, the following purposes:

(a) To hear and determine motions for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(b) To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(c) To ensure that distributions to holders of Allowed Claims and Equity Interests are accomplished as provided herein;

(d) To consider Claims and Equity Interests or the allowance, classification, priority, compromise, estimation or payment of any Claim or Equity Interest, Administrative Expense Claim, Disputed Claim or Equity Interest;

(e) To remove to the Bankruptcy Court civil actions pending in state court;

(f) To enter, implement or enforce such orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(g) To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation or enforcement of this Plan, the Confirmation Order or any other order of the Bankruptcy Court;

(h) To hear and determine any application to modify this Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan, the disclosure statement for this Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i) To hear and determine all applications under sections 330, 331 and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date;

(j) To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of this Plan, the Confirmation Order, any transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(k) To take any action and issue such orders as may be necessary to construe, enforce, implement, execute and consummate this Plan or to maintain the integrity of this Plan following consummation;

(l) To hear any disputes arising out of, and to enforce, the order approving alternative dispute resolution procedures to resolve personal injury, employment litigation and similar Claims pursuant to section 105(a) of the Bankruptcy Code;

(m) To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(n) To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code filed, or to be filed, with respect to tax returns for any and all taxable periods ending after the Commencement Date through, and including, the Final Distribution Date);

(o) To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(p) To recover all assets of any of the Debtors and property of the applicable Debtor's Estate, wherever located; and

(q) To enter a final decree closing the Chapter 11 Cases.

## SECTION 13.     MISCELLANEOUS PROVISIONS

### 13.1  *No Retiree Benefits.*

The Debtors no longer fund or maintain any retiree benefit plans, funds or programs, as defined in section 1114 of the Bankruptcy Code, for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise). Any such retiree benefit plans established by the Debtors prior to the Commencement Date were assumed and assigned as part of the sale of the Debtors' on-going businesses, and, accordingly, no such payments will be, or are required to be, made pursuant to section 1129(a)(13).

### 13.2  *Deletion of Classes and Subclasses.*

Any Class or Subclass of Claims that does not contain as an element thereof an Allowed Claim or a Claim temporarily allowed under Bankruptcy Rule 3018 as of the date of the commencement of the confirmation hearing shall be deemed deleted from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class or Subclass under section 1129(a)(8) of the Bankruptcy Code.

### 13.3  *Post-Effective Date Committee; Dissolution of Committee.*

(a) Post-Effective Date Committee. Until the Final Distribution Date, the Committee shall continue in existence; provided however that as of the Effective Date,

the Committee shall be reconstituted and shall be comprised of at least five (5) members of the Committee prior to the Effective Date. The Committee members who are no longer members of the Committee as of the Effective Date shall be released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Chapter 11 Case of the Debtors. In the event of the death or resignation of any member of the Committee after the Effective Date, the remaining members of the Committee shall have the right to designate a successor from among the holders of Allowed Class 3 Claims. If a Committee member assigns its entire Claim or releases the Debtors from payment of the entire balance of its Claim, such act shall constitute a resignation from the Committee. Until a vacancy on the Committee is filled, the Committee shall function in its reduced number. The individual members of the Committee shall serve without compensation, except that they shall be entitled to reimbursement of reasonable expenses by the Debtors pursuant to the procedures set forth in Section 13.4 of this Plan.

(b) On the Final Distribution Date and following all payments being made to holders of Allowed Class 3 Claims under this Plan, the Committee shall be dissolved and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Chapter 11 Case of the Debtors, and the retention or employment of the Committee's attorneys, accountants, and other agents, shall terminate.

13.4 ***Post-Confirmation Date Fees and Expenses of Professionals.***

After the Confirmation Date, the Debtors shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of the professional persons employed by the Debtors and the Committee in connection with the implementation and consummation of this Plan, the claims reconciliation process and any other matters as to which such professionals may be engaged. The fees and expenses of such professionals shall be paid within fifteen (15) Business Days after submission of a detailed invoice therefor to the Debtors and the Committee. If the Debtors or the Committee disputes the reasonableness of any such invoice, the Debtor, Committee or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved. The undisputed portion of such fees and expenses shall be paid as provided for herein.

13.5 ***USB Indenture Trustee Fees and Expenses and Preservation of the USB Indenture Trustee's charging lien.***

(a) The provisions of the USB Indentures governing the relationships of the USB Indenture Trustee and the USB Noteholders, including, without limitation, those

provisions relating to distributions, the USB Indenture Trustee's right to payment, liens on property to be distributed to USB Noteholders, and the USB Indenture Trustee's rights of indemnity, shall not be affected by the Plan, confirmation, or the occurrence of the Effective Date. Accordingly, the USB Indenture Trustee shall be entitled, to the extent provided for under the USB Indentures, to deduct (in the manner provided for below) its reasonable fees, costs and expenses, including reimbursement of its legal fees and expenses, incurred in performing its duties as indenture trustee of the USB Notes from the Commencement Date through the Effective Date, and the reasonable fees, costs and expenses, including reimbursement of its legal fees and expenses, incurred after the Effective Date in connection with the making of any distribution under the Plan (all such fees and expenses, the "USB Indenture Trustee Charges").

(b) The USB Indenture Trustee Charges shall be deducted from the distributions payable under the Plan to the holders of Allowed USB Note Claims in accordance with the USB Indentures. The USB Indenture Trustee's charging lien will be discharged solely upon payment in full of its fees and expenses. Nothing herein shall be deemed to impair, waive or discharge the USB Indenture Trustee's charging lien against property held to be distributed to USB Noteholders pursuant to the Plan. The USB Indenture Trustee will not be required to file a fee application or to comply with guidelines and rules applicable to a fee application, and will not be subject to Sections 330 or 503(b) of the Bankruptcy Code.

(c) Notwithstanding anything in the Plan to the contrary, to the extent there is any Available Cash from the returned, undeliverable or forfeited distributions to holders of Allowed USB Note Claims in Class 3 under Sections 7.2(ii), 7.5, 7.6, 7.8 or 7.12 of this Plan, then such amounts shall be applied as follows: (i) first, as Available Cash to be redistributed to the holders of Allowed USB Note Claims to the extent that their distributions under the Plan were reduced and offset by all or a portion of the USB Indenture Trustee Charges, and (ii) thereafter, as Available Cash to be allocated and disbursed in accordance with sections 7.2(ii), 7.5, 7.6, 7.8 or 7.12 of the Plan.

(d) If the USB Indenture Trustee does not serve as disbursing agent with respect to distributions to holders of USB Note Claims, then the funds distributed to any such disbursing agent shall be subject to the lien of the USB Indenture Trustee under the USB Indentures.

### 13.6 *Exemption from Transfer Taxes.*

Pursuant to section 1146(c) of the Bankruptcy Code, neither (i) the issuance transfer or exchange of any security under, in furtherance of, or in connection with, this Plan, nor (ii) the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including any deeds, bills of sale or assignments executed in

connection with any disposition of assets contemplated by this Plan (including real and personal property), shall be subject to any stamp, real estate transfer, mortgage recording sales, use or other similar tax.

### 13.7 *Substantial Consummation.*

On the Effective Date, this Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 13.8 *Payment of Statutory Fees.*

All fees payable pursuant to chapter 123 of title 28, United States Code, as determined by the Bankruptcy Court on the Confirmation Date, shall be paid on the Effective Date. Any statutory fees accruing after the Confirmation Date shall constitute Administrative Expense Claims and be paid in accordance with Section 2.1 of this Plan.

### 13.9 *Effectuating Documents and Further Transactions.*

The Chief Executive Officer and President, or if such person is unable or unwilling to do so, any other authorized officer of the Debtors shall be authorized to execute, deliver, file, or record such contracts, instruments, releases and other agreements or documents and take such actions on behalf of the Debtors as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan, without any further action by or approval of the Board of Directors of the Debtors. .

### 13.10 *Amendments.*

The Plan Proponents reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan at any time prior to the entry of the Confirmation Order. After the entry of the Confirmation Order, the Plan Proponents may, upon order of the Bankruptcy Court, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan. A holder of an Allowed Claim or Equity Interest that is deemed to have accepted this Plan shall be deemed to have accepted this Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim or Equity Interest of such holder.

### 13.11 *Revocation or Withdrawal of Plan.*

The Plan Proponents may withdraw or revoke this Plan at any time prior to the Confirmation Date. If the Plan Proponents revoke or withdraw this Plan prior to the Confirmation Date, or if the Confirmation Date does not occur, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to

constitute a waiver or release of any Claim by or against the respective Debtor or any other Person or to prejudice in any manner the rights of the respective Debtor or any other Person in any further proceedings involving the respective Debtor.

### 13.12 *Cramdown.*

The Plan Proponents request confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Class that is deemed to have not accepted this Plan pursuant to section 1126(g) of the Bankruptcy Code. The Plan Proponents reserve the right to (i) request confirmation of this Plan under section 1129(b) of the Bankruptcy Code with respect to any Class or Subclass that does not accept this Plan pursuant to section 1126 of the Bankruptcy Code and (ii) to modify this Plan to the extent, if any, that confirmation of this Plan under section 1129(b) of the Bankruptcy Code requires modification.

### 13.13 *Severability.*

In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision of this Plan is invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Plan Proponents, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistently with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 13.14 *Request for Expedited Determination of Taxes.*

Each Debtor shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Commencement Date through and including the Final Distribution Date.

### 13.15 *Courts of Competent Jurisdiction.*

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of this Plan, such abstention, refusal or failure of jurisdiction shall have no effect upon and shall not

control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

### 13.16 *Governing Law.*

Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, or to the extent that an Exhibit hereto or a Schedule in the Plan Supplement provides otherwise, the rights, duties and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

### 13.17 *Time.*

In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

### 13.18 *Headings.*

Headings are used in this Plan for convenience and reference only and shall not constitute a part of this Plan for any other purpose.

### 13.19 *Exhibits.*

All Exhibits and Schedules to this Plan are incorporated into and are a part of this Plan as if set forth in full herein.

### 13.20 *Notices.*

Any notices to or requests of the Plan Proponents by parties in interest under or in connection with this Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

CASUAL MALE CORP.
555 Turnpike Street
Canton, Massachusetts 02021
Attn:   Michael A. O'Hara, Esq.

with copies to:

CADWALADER, WICKERSHAM & TAFT LLP
Attorneys for the Debtors and Debtors-In-Possession

100 Maiden Lane
New York, New York  10038
(212) 504-6000
Attn:   Adam C. Rogoff, Esq.

    -and-

KRONISH LIEB WEINER & HELLMAN, LLP
Attorneys for the Official Committee of Unsecured
Creditors
1114 Avenue of the Americas
New York, New York  10136
(212) 479-6140
Attn:   Lawrence C. Gottlieb, Esq.

Dated:      New York, New York
               As of August 18, 2003

CASUAL MALE CORP.
TCMB&T, INC.
BUCKMIN, INC.
ELM EQUIPMENT CORP.
ISAB, INC.
JIB APPAREL, INC.
JBI HOLDING COMPANY, INC.
JBI, INC.
LP INNOVATIONS, INC.
MORSE SHOE, INC.
MORSE SHOE INTERNATIONAL, INC.
SPENCER COMPANIES, INC.
TCM HOLDING COMPANY, INC.
THE CASUAL MALE, INC.
WGS CORP.
WHITE CAP FOOTWEAR, INC.


By: /s/ Michael A. O'Hara_____
    Name:  Michael A. O'Hara
    Title:   Authorized Officer


OFFICIAL COMMITTEE OF UNSECURED
CREDITORS

By: /s/ Patrick Rohan_____
    Name: Patrick Rohan, The CIT Group
    Title: Co-Chair of the Committee

<u>**EXHIBIT A**</u>

| <u>**NAME OF DEBTOR**</u> | <u>**CASE NUMBER**</u> |
|---|---|
| TCMB&T, Inc. | 01-41403 (REG) |
| Casual Male Corp, f/k/a J. Baker, Inc. | 01-41404 (REG) |
| Buckmin, Inc. | 01-41405 (REG) |
| Elm Equipment Corp. | 01-41406 (REG) |
| ISAB, Inc. | 01-41407 (REG) |
| JBI Apparel, Inc. | 01-41408 (REG) |
| JBI Holding Company, Inc. | 01-41409 (REG) |
| JBI, Inc. | 01-41410 (REG) |
| LP Innovations, Inc. | 01-41411 (REG) |
| Morse Shoe, Inc. | 01-41412 (REG) |
| Morse Shoe International, Inc. | 01-41413 (REG) |
| Spencer Companies, Inc. | 01-41414 (REG) |
| TCM Holding Company, Inc. | 01-41415 (REG) |
| The Casual Male, Inc. | 01-41416 (REG) |
| WGS Corp. | 01-41417 (REG) |
| White Cap Footwear, Inc. | 01-41418 (REG) |

<u>**TRADE NAMES**</u>:

TCMB&T, Inc. and The Casual Male, Inc. d/b/a Casual Male Big & Tall

TCMB&T, Inc. and The Casual Male, Inc. d/b/a B&T Factory Store

WGS Corp. d/b/a Work 'n Gear

JBI Apparel, Inc. d/b/a Repp Ltd. Big & Tall

JBI Apparel, Inc. d/b/a High & Mighty

LP Innovations, Inc. d/b/a LPI

LP Innovations, Inc. d/b/a Securex

## Exhibit 1.21

| DEBTOR GROUP | CONVENIENCE CLASS AMOUNT |
|---|---|
| **THE CASUAL MALE DEBTORS**<br><br>• The Casual Male, Inc. (d/b/a "Casual Male Big & Tall" and "B&T Factory Store")<br><br>• TCM Holding Company, Inc.<br><br>• TCMB&T, Inc. (d/b/a "Casual Male Big & Tall" and "B&T Factory Store") | N/A [1] |
| **THE PARENT DEBTOR**<br><br>• Casual Male Corp. f/k/a J.Baker, Inc. | $365.00 |
| **THE SHOE DEBTORS**<br><br>• JBI, Inc.<br><br>• JBI Holding Co., Inc.<br><br>• Buckmin, Inc.,<br><br>• Elm Equipment Corp.<br><br>• ISAB, Inc.<br><br>• Morse Shoe, Inc.<br><br>• Morse Shoe Int'l, Inc.<br><br>• Spencer Companies, Inc.<br><br>• White Cap Footwear, Inc. | $350.00 |
| **THE REPP DEBTOR**<br><br>• JBI Apparel, Inc. (d/b/a "Repp Ltd. Big & Tall" and "High & Mighty") | $50.00 |
| **THE WORK N' GEAR DEBTOR**<br><br>• WGS Corp. (d/b/a "Work 'n Gear") | $50.00 |
| **THE LOSS PREVENTION DEBTOR**<br><br>• LP Innovations, Inc. (d/b/a "LPI" and "Securex") | $50.00 |

---

[1] Please note there is no Class 4 treatment against the Casual Male Debtors.